**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NIVAGEN PHARMACEUTICALS LLC, *Plaintiff,* | ) | |
| v. | ) | C.A. No. ______________ |
| HQ SPECIALTY PHARMA CORPORATION, *Defendant.* | ) | |

# COMPLAINT FOR PATENT INFRINGEMENT OF U.S. PATENT NO. 11,925,661

Plaintiff Nivagen Pharmaceuticals LLC ("Nivagen"), by and through its attorneys, brings this action against Defendant HQ Specialty Pharma Corporation ("HQ"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for infringement of U.S. Patent No. 11,925,661 (the "'661 patent" or the "Asserted Patent") under the patent laws of the United States, Title 35, United States Code. The action arises from HQ's submission of Abbreviated New Drug Application ("ANDA") No. 220035 to the U.S. Food and Drug Administration ("FDA") seeking approval to commercially manufacture, use, offer for sale, sell, and/or import a generic version of Potassium Phosphates in 0.9% Sodium Chloride Injection approved under NDA No. 218343 (the "HQ ANDA Product") before expiration of the '661 patent.

2. By letter dated October 23, 2026, HQ purported to provide notice that ANDA No. 220035 contains a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) concerning the '661 patent, together with an enclosed detailed statement of HQ's factual and legal positions (the "Detailed Statement") (collectively, the "HQ Notice Letter"). The HQ Notice Letter was addressed both to Nivagen Pharmaceuticals, Inc. at 3050 Fite Circle, Suite 100, Sacramento, California 95827, and

to Umberg Zipser LLP, 1920 Main Street, Suite 750, Irvine, California 92614, prosecution counsel for the ’661 patent and the correspondence address identified in the records of the United States Patent and Trademark Office for the ’661 patent.

3. Based on its records and investigation to date, Nivagen has no record that the HQ Notice Letter was delivered directly to Nivagen Pharmaceuticals, Inc. at its 3050 Fite Circle, Suite 100 address. Copies of the HQ Notice Letter were delivered to Amneal EU LTD, the holder of NDA No. 218343 and Umberg Zipser on October 26, 2026. On October 28, 2026, Nivagen received a copy of the HQ Notice Letter from Amneal EU LTD. On October 29, 2026, Umberg Zipser separately informed Nivagen that it had received the HQ Notice Letter and transmitted a copy to Nivagen.

4. This action is being filed within forty-five (45) days of October 23, 2026, the date of the HQ Notice Letter; within forty-five (45) days of October 26, 2026, the date on which Amneal EU LTD and Umber Zipser were delivered copies of the HQ Notice Letter; within forty-five (45) days of October 28, 2026, the date on which Nivagen received a copy of the HQ Notice Letter from Amneal EU LTD; and within forty-five (45) days of October 29, 2026, the date on which Nivagen received a copy of the HQ Notice Letter from Umberg Zipser. Accordingly, this action is timely regardless of whether the applicable forty-five-day period is measured from receipt by Umberg Zipser or Amneal EU LTD, or from Nivagen’s receipt of a copy of the HQ Notice Letter on October 28, 2026 and October 29, 2026. Nivagen does not waive, and expressly reserves, its rights and positions concerning the sufficiency of HQ’s notice, the manner in which it was delivered, and the date on which the forty-five-day period under 21 U.S.C. § 355(j)(5)(B)(iii) commenced. Nivagen seeks all relief available under 35 U.S.C. § 271(e)(4) and, to the extent applicable, 21 U.S.C. § 355(j)(5)(B)(iii).

## THE PARTIES

5. Nivagen is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 3900 Duckhorn Drive, Sacramento, California 95834.

6. On information and belief, HQ is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 120 Route 17 North, Suite 130, Paramus, New Jersey 07652.

7. On information and belief, HQ develops, seeks regulatory approval for, manufactures or arranges to have manufactured, markets, distributes, offers for sale, and sells pharmaceutical products throughout the United States, including Delaware. HQ develops generic and specialty injectable pharmaceutical products, including the proposed HQ ANDA Product.

8. HQ submitted ANDA No. 220035 to FDA and is the applicant responsible for obtaining approval to commercially manufacture, use, offer for sale, sell, and/or import the HQ ANDA Product in the United States.

## JURISDICTION AND VENUE

9. This action arises under the patent laws of the United States, Title 35, United States Code. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and may grant declaratory and further relief under 28 U.S.C. §§ 2201 and 2202.

10. HQ is subject to specific personal jurisdiction in Delaware because HQ submitted ANDA No. 220035 seeking approval to market the HQ ANDA Product throughout the United States, including Delaware, and intends to distribute the approved product through established distribution channels reaching Delaware. On information and belief, the anticipated commercial

activities in Delaware are related to the ANDA submission underlying Nivagen's claims. The exercise of specific jurisdiction is consistent with due process.

11. HQ addressed the HQ Notice Letter to Nivagen and Umberg Zipser and asserted that the '661 patent is invalid, unenforceable, and/or will not be infringed by the HQ ANDA Product. HQ's submission of ANDA No. 220035 with a Paragraph IV certification constitutes an act of infringement under 35 U.S.C. § 271(e)(2)(A) and creates a present dispute concerning the '661 patent.

12. On information and belief, following FDA approval, HQ intends to commercialize the HQ ANDA Product throughout the United States, including Delaware, by itself or through affiliates, distributors, or other commercial partners. On information and belief, the product will be supplied to Delaware hospitals, pharmacies, and healthcare providers for administration to Delaware patients. HQ has not indicated that it intends to exclude Delaware from the market for the HQ ANDA Product.

13. On information and belief, HQ and its affiliates participate in marketing and distributing FDA-approved injectable pharmaceutical products in the United States, including to customers in Delaware. HQ intends to use similar distribution channels for the HQ ANDA Product.

14. On information and belief, HQ's decision to seek nationwide approval for the HQ ANDA Product and its plans for commercialization in Delaware create contacts supporting specific personal jurisdiction.

15. HQ has previously participated in patent litigation in this District under the Drug Price Competition and Patent Term Restoration Act of 1984, 21 U.S.C. § 355(j) (the "Hatch-Waxman Act"), including by filing actions to enforce its patents against companies seeking

approval of generic pharmaceutical products through abbreviated new drug applications ("ANDAs").

16. HQ has also purposefully availed itself of this District by initiating several pharmaceutical patent actions here and seeking affirmative relief under the patent laws. *See, e.g.*, *HQ Specialty Pharma Corp. v. Fresenius Kabi USA, LLC,* C.A. No. 21-1714-MN (D. Del. Dec. 3, 2021); *HQ Specialty Pharma Corp. v. Amneal Pharmaceuticals LLC,* C.A. No. 23-1135-MN (D. Del. Oct. 11, 2023); *HQ Specialty Pharma Corp. v. Sagent Pharmaceuticals,* C.A. No. 25-1227-MN (D. Del. Oct. 3, 2025); *and HQ Specialty Pharma Corp. v. Cipla Ltd.,* C.A. No. 25-1236-MN (D. Del. Oct. 7, 2025). In its prior Delaware actions, HQ sought affirmative relief under the patent laws and, in at least the Fresenius and Amneal actions, submitted to adjudication of counterclaims concerning patent validity, enforceability, and related issues. HQ's prior litigation further supports the reasonableness of litigating this dispute in Delaware, in addition to the contacts noted above.

17. The exercise of specific personal jurisdiction over HQ is consistent with due process because HQ's ANDA submission and planned distribution are directed toward Delaware, and this action arises from those contacts.

18. Upon information and belief, HQ and WG Critical Care, LLC ("WG Critical Care") are affiliated pharmaceutical companies that maintain the same business address at 120 Route 17 North, Paramus, New Jersey. HQ develops and obtains regulatory approval for pharmaceutical products, and WG Critical Care commercializes, markets, distributes, and sells certain pharmaceutical products developed, owned, licensed, or controlled by HQ, including injectable products and products supplied in intravenous bags.

19. Upon information and belief, HQ and WG Critical Care are under common corporate ownership. In prior litigation in this District, HQ and WG Critical Care alleged that WG

Critical Care holds an exclusive license from HQ to sell products covered by HQ's U.S. Patent No. 10,130,646 in the United States, has the right to enforce that patent, and is responsible for marketing and selling HQ's calcium gluconate in sodium chloride solution in the United States. *See HQ Specialty Pharma Corp. v. Cipla Ltd.*, C.A. No. 25-1236-MN, D.I. 1 ¶¶ 19–20 (D. Del. Oct. 7, 2025).

20. HQ and WG Critical Care have repeatedly acted together as co-plaintiffs in patent-infringement actions in this District, including the *Fresenius*, *Amneal*, *Sagent*, and *Cipla* actions identified above.

21. WG Critical Care holds and has maintained an active Pharmacy - Wholesale license issued by the Delaware Board of Pharmacy, License No. A4-0001834. The license was initially issued on August 23, 2011 and presently expires on September 30, 2028. By obtaining and maintaining that license, WG Critical Care has sought and obtained regulatory authorization to engage in the wholesale distribution of pharmaceutical products into or within Delaware.

22. Upon information and belief, HQ uses WG Critical Care as a commercialization, marketing, and distribution affiliate for certain pharmaceutical products developed, owned, licensed, or controlled by HQ. Through that established and Delaware-licensed commercialization channel, HQ and its affiliate deliberately market and distribute pharmaceutical products into Delaware and derive revenue from pharmaceutical products sold, distributed, prescribed, dispensed, and used in Delaware.

23. Upon information and belief, HQ intends to use the same or similar established commercialization and distribution channels through which HQ-developed pharmaceutical products are marketed and distributed throughout the United States, including Delaware, to commercialize the HQ ANDA Product following FDA approval.

24. HQ's established commercialization relationship with WG Critical Care, WG Critical Care's longstanding Delaware wholesale-distributor license, the companies' coordinated distribution of HQ pharmaceutical products into Delaware, and HQ's repeated use of this Court further demonstrate the substantial connection between HQ's pharmaceutical business and this District. HQ has repeatedly chosen this District as a forum for pharmaceutical patent litigation, and this Court previously adjudicated substantial issues concerning the same '661 patent in *Nivagen Pharmaceuticals, Inc. v. Amneal Pharmaceuticals, Inc.*, C.A. No. 24-846-GBW (D. Del.). These circumstances further support the propriety of venue in this District and demonstrate that adjudicating this action here would promote judicial economy.

**<u>THE '661 PATENT AND THE REFERENCE PRODUCT</u>**

25. The '661 patent, entitled "Ready-To-Use Potassium Phosphates in Sodium Chloride Solutions," was duly and legally issued by the United States Patent and Trademark Office on March 12, 2024. A true and correct copy of the '661 patent is attached as Exhibit A.

26. Nivagen is the sole and exclusive owner, by assignment, of all right, title, and interest in the '661 patent, including the right to sue for infringement.

27. The '661 patent claims priority to U.S. Provisional Patent Application No. 63/090,518, filed October 12, 2020.

28. The '661 patent claims, among other things, sterile ready-to-use potassium phosphates products in aqueous sodium chloride solution and methods of administering such products without prior dilution. Claims 1, 11, and 17 are independent claims.

29. FDA approved NDA No. 218343 on July 26, 2024 for Potassium Phosphates in 0.9% Sodium Chloride Injection containing phosphorus 15 mmol/250 mL and potassium 22

mEq/250 mL (phosphorus 0.06 mmol/mL and potassium 0.088 mEq/mL) for intravenous use (the "Reference Product"). Amneal EU LTD is the holder of NDA No. 218343.

30. The approved labeling for the Reference Product states that the product is a sterile, non-pyrogenic, ready-to-use solution containing monobasic potassium phosphate, USP and dibasic potassium phosphate, USP in 0.9% sodium chloride; requires no dilution before administration; and is supplied in a 250 mL single-dose intravenous infusion bag.

31. The approved labeling further states that the Reference Product contains no more than 25 mcg/L aluminum and may be administered through a central or peripheral venous catheter at maximum recommended phosphorus infusion rates of 15 mmol/hour and 6.8 mmol/hour, respectively.

32. The ’661 patent is listed in FDA's publication Approved Drug Products with Therapeutic Equivalence Evaluations, commonly known as the "Orange Book," in connection with NDA No. 218343. The Orange Book lists an expiration date of October 12, 2041 for the ’661 patent.

33. Nivagen previously asserted the ’661 patent against the Reference Product in *Nivagen Pharmaceuticals, Inc. v. Amneal Pharmaceuticals, Inc., et al.*, C.A. No. 24-846-GBW (D. Del.). On September 23, 2024, following briefing and a hearing, the Court granted Nivagen's motion for a preliminary injunction. In doing so, the Court concluded, at the preliminary-injunction stage, that Nivagen had demonstrated a likelihood of success on its infringement claim under the ’661 patent and that Amneal had not raised a substantial question concerning the validity of the asserted claims of the ’661 patent, including based on Amneal's priority, anticipation, and obviousness arguments. The parties subsequently settled the action, and on July 27, 2026, the

Court dismissed all claims, counterclaims, and defenses between Nivagen and Amneal without prejudice.

34. On April 11, 2025, Amneal Pharmaceuticals, Inc., identifying Amneal EU, Ltd., Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals of New York, LLC, and Amneal Pharmaceuticals Pvt. Ltd. as real parties-in-interest, filed petitions for inter partes review of the ’661 patent and the related U.S. Patent No. 11,813,291. The petitions were assigned Proceeding Nos. IPR2025-00731 and IPR2025-00779, respectively. On September 3, 2025, the Acting Director of the United States Patent and Trademark Office discretionarily denied institution of both petitions under 35 U.S.C. § 314(a). The Acting Director determined that the District Court had already preliminarily considered substantially similar issues concerning the sterility and ready-to-use properties of the claimed inventions, as well as Amneal’s priority and anticipation arguments, and that having the Patent Trial and Appeal Board revisit substantially similar subject matter would not be an efficient use of Office resources.

**HQ’S ANDA NO. 220035 AND NOTICE LETTER**

35. The HQ Notice Letter states that FDA received ANDA No. 220035 and that HQ received FDA’s Paragraph IV acknowledgment letter for that ANDA.

36. The HQ Notice Letter identifies the established name of the proposed drug product as potassium phosphates in 0.9% sodium chloride and identifies NDA No. 218343 as the referenced application.

37. The HQ Notice Letter identifies the active ingredients as dibasic potassium phosphate and monobasic potassium phosphate, in amounts of 1.18 g/250 mL (4.72 mg/mL) and 1.12 g/250 mL (4.48 mg/mL), respectively.

38. The HQ Notice Letter states that the HQ ANDA Product is a solution for intravenous injection in single-dose bags.

39. The HQ Notice Letter states that ANDA No. 220035 includes a Paragraph IV certification alleging that the ’661 patent is invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, or sale of the HQ ANDA Product.

40. HQ’s Detailed Statement purports to incorporate Amneal’s prior IPR petition and supporting papers and asserts additional invalidity theories under 35 U.S.C. § 112. The Detailed Statement does not identify any specific claim limitations of the ’661 patent that HQ contends is absent from the HQ ANDA Product, but reserves HQ’s right to assert additional noninfringement and invalidity defenses.

41. HQ’s Notice Letter did not contain an offer of confidential access to HQ’s ANDA under 21 U.S.C. § 355(j)(5)(c)(i)(III).

42. On information and belief, ANDA No. 220035 has not yet received final FDA approval.

43. On information and belief, HQ intends to obtain final approval of ANDA No. 220035 and, immediately or shortly thereafter, to commercially manufacture, import, market, distribute, offer for sale, and sell the HQ ANDA Product throughout the United States before expiration of the ’661 patent.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 11,925,661

44. Nivagen re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

45. HQ submitted ANDA No. 220035 to FDA under 21 U.S.C. § 355(j) to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the HQ ANDA Product before expiration of the ’661 patent.

46. By submitting ANDA No. 220035, HQ has infringed one or more of the claims of the ’661 patent under 35 U.S.C. § 271(e)(2)(A).

potassium.

47. By reason of the HQ Notice Letter, the information disclosed therein, the nature of an ANDA seeking approval for a generic version of the Reference Product, and other publicly available information, Nivagen is informed and believes that the HQ ANDA Product and its proposed use satisfy each limitation of one or more claims of the ’661 patent, literally or under the doctrine of equivalents.

48. Nivagen is further informed and believes that HQ’s proposed labeling and instructions for use will actively encourage healthcare providers and others to use the HQ ANDA Product in a manner that infringes one or more claims of the ’661 patent.

49. Immediately upon FDA approval of ANDA No. 220035, upon information and belief HQ intends to commercially manufacture, use, sell, offer for sale, market, distribute, and/or import the HQ ANDA Product throughout the United States. Those commercial activities will directly infringe at least the asserted product claims of the ’661 patent under 35 U.S.C. § 271(a) and, through HQ’s proposed labeling and instructions for use, will induce infringement of the asserted method claims under 35 U.S.C. § 271(b), and/or constitute contributory infringement under 35 U.S.C. § 271(c).

50. HQ has acted with full knowledge of the ’661 patent and its claims. Notwithstanding that knowledge, HQ has stated its intent to seek FDA approval for and commercialize the HQ ANDA Product before expiration of the ’661 patent.

51. As a result of the foregoing, Nivagen will be substantially and irreparably harmed if HQ’s infringement is not enjoined. Nivagen does not have an adequate remedy at law.

52. Nivagen is entitled to the relief provided by 35 U.S.C. § 271(e)(4), including an order that the effective date of any FDA approval of ANDA No. 220035 be a date not earlier than the expiration of the ’661 patent, including any applicable patent-term or pediatric extensions, and an injunction against commercial manufacture, use, offer for sale, sale, or importation of the HQ ANDA Product before that date.

## PRAYER FOR RELIEF

WHEREFORE, Nivagen respectfully requests that the Court enter judgment in its favor and against HQ as follows:

(a) A judgment that HQ has infringed the ’661 patent under 35 U.S.C. § 271(e)(2)(A) by submitting ANDA No. 220035;

(b) A judgment that the commercial manufacture, use, offer for sale, sale, and/or importation of the HQ ANDA Product before expiration of the ’661 patent will infringe one or more claims of the ’661 patent under 35 U.S.C. §§ 271(a), (b), and/or (c);

(c) An order under 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any FDA approval of ANDA No. 220035 shall be no earlier than the expiration of the ’661 patent, including any applicable patent-term or pediatric extensions;

(d) A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and 283 enjoining HQ and all persons acting in concert with HQ from commercially manufacturing, using, offering for

sale, selling, marketing, distributing, or importing the HQ ANDA Product before expiration of the ’661 patent, including any applicable patent-term or pediatric extensions;

(e) If HQ commercially manufactures, uses, offers for sale, sells, or imports the HQ ANDA Product before expiration of the ’661 patent, an award of monetary damages under 35 U.S.C. § 271(e)(4)(C) and/or § 284, as applicable, together with prejudgment and postjudgment interest and all other relief available under law;

(f) A declaration that this is an exceptional case and an award to Nivagen of its reasonable attorneys’ fees under 35 U.S.C. § 285, to the extent warranted;

(g) Nivagen’s costs and expenses in this action; and

(h) Such other and further relief as the Court deems just and proper.

Dated: November 24, 2026

POLSINELLI PC

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com

*Attorneys for Plaintiff Nivagen Pharmaceuticals*

OF COUNSEL:

Chad A. Landmon (*pro hac vice* forthcoming)
POLSINELLI PC
1401 Eye Street, N.W., Suite 800
Washington, D.C. 20005
clandmon@polsinelli.com

Corey M. Casey (*pro hac vice* forthcoming)
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
ccasey@polsinelli.com